**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| American Chemistry Council, Inc., | |
| Plaintiff, | |
| v. | Civil Action No. 23-cv-2113-JDB |
| National Academy of Sciences, et al. | |
| Defendants. | |

**DEFENDANT NATIONAL ACADEMY OF SCIENCES'S
MEMORANDUM IN SUPPORT OF ITS MOTION TO DISMISS
AND IN OPPOSITION TO PLAINTIFF AMERICAN CHEMISTRY
COUNCIL'S MOTION FOR A PRELIMINARY INJUNCTION**

**TABLE OF CONTENTS**

**Page(s)**

INTRODUCTION ................................................................................................... 1

BACKGROUND .................................................................................................... 2

      A.    The National Academy of Sciences is an independent,
             nongovernmental research institution. ............................................... 2

      B.    FACA sets separate standards for the Academy's committees
             and federal advisory committees. ........................................................ 3

      C.    The Academy formed a committee to review certain aspects of
             EPA's draft formaldehyde assessment. ............................................... 4

      D.    The Academy's committee, complying with Academy policies,
             reviewed EPA's formaldehyde assessment. ........................................ 6

ARGUMENT ......................................................................................................... 8

I.     Because the Mandamus Act cannot be used against a private institution
      like the Academy, ACC's claims should be dismissed. ................................. 8

      A.    ACC brings its claims under the Mandamus Act because FACA
             does not create a right of action. .......................................................... 8

      B.    The Mandamus Act applies only to federal officers, employees,
             and agencies. ......................................................................................... 10

      C.    Since no one on the Academy's committee is a federal officer or
             employee, the Mandamus Act does not apply. ................................. 11

      D.    Because the Academy's committee is not a federal advisory
             committee, Mandamus Act precedent does not apply. .................... 12

      E.    ACC cannot state a stand-alone claim under the Declaratory
             Judgment Act. ...................................................................................... 15

II.    Even if its claims against the Academy survive, ACC is not entitled
       to a preliminary injunction. ................................................................. 16

       A.    ACC is unlikely to succeed on the merits......................................... 16

             1.    ACC is unlikely to make the extraordinary showing
                   required by the Mandamus Act............................................... 17

             2.    The Academy's formaldehyde committee was fairly
                   balanced. ................................................................................ 17

             3.    The members of the Academy's committee did not have
                   any conflicts of interest. ........................................................ 20

             4.    The Academy's committee properly disclosed
                   information.............................................................................. 22

             5.    EPA did not manage or control the Academy's
                   committee. ............................................................................... 24

       B.    ACC will not suffer irreparable harm without an injunction....... 26

             1.    ACC's delay in seeking a preliminary injunction implies
                   a lack of irreparable harm. .................................................... 26

             2.    The Academy's review will not irreparably harm ACC
                   or its members......................................................................... 27

       C.    Both the balance of harms and the public interest weigh against
             an injunction. ..................................................................................... 29

CONCLUSION ............................................................................................... 31

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Aetna Life Ins. Co. v. Haworth,*
300 U.S. 227 (1937) ...................................................................................... 16

*Ali v. Rumsfeld,*
649 F.3d 762 (D.C. Cir. 2011) ...................................................................... 16

*Brandt v. Bd. of Educ.,*
480 F.3d 460 (7th Cir. 2007) ........................................................................ 31

*C&E Servs. v. D.C. Water & Sewer Auth.,*
310 F.3d 197 (D.C. Cir. 2002) ...................................................................... 16

*Cargill, Inc. v. United States,*
173 F.3d 323 (5th Cir. 1999) ........................................................................ 21

*Chaplaincy of Full Gospel Churches v. England,*
454 F.3d 290 (D.C. Cir. 2006) ...................................................................... 27

*In re Cheney,*
406 F.3d 723 (D.C. Cir. 2005) ....................................................... 10, 11, 18

*ConverDyn v. Moniz,*
68 F. Supp. 3d 34 (D.D.C. 2014) .................................................................. 27

*Dallas Safari Club v. Bernhardt,*
453 F. Supp. 3d 391 (D.D.C. 2020) .............................................................. 28

*Davis v. Pension Benefit Guarantee Corp.,*
571 F.3d 1288 (D.C. Cir. 2009) ...................................................................... 2

*Dunlap v. Presidential Advisory Comm. on Election Integrity,*
464 F. Supp. 3d 247 (D.D.C. 2020) ....................................................... 10, 15

*Elec. Privacy Info. Ctr. v. Nat'l Sec. Comm'n on Artificial Intelligence,*
466 F. Supp. 3d 100 (D.D.C. 2020) .............................................................. 14

*Fund for Animals v. Frizzell,*
530 F.2d 982 (D.C. Cir. 1975) ...................................................................... 28

*González-Vera v. Townley*,
    83 F. Supp. 3d 306 (D.D.C. 2015) ....................................................... 12, 13

*Hurd v. Dist. of Col.*,
    864 F.3d 671 (D.C. Cir. 2017) ....................................................... 9

*Intelsat USA Sales Corp. v Juch-Tech, Inc.*,
    935 F. Supp. 2d 101 (D.D.C. 2013) ....................................................... 16

*Jerome Stevens Pharm., Inc. v. FDA*,
    402 F.3d 1249 (D.C. Cir. 2005) ....................................................... 9

*Johnson v. Interstate Mgmt. Co., LLC*,
    849 F.3d 1093 (D.C. Cir. 2017) ....................................................... 15

*Kokkonen v. Guardian Life Ins. Co. of Am.*,
    511 U.S. 375 (1994) ....................................................... 9

*NAACP Legal Def. & Educ. Fund v. Barr*,
    496 F. Supp. 3d 116 (D.D.C. 2020) ....................................................... 13, 14, 20

*Nat'l Mining Ass'n v. Jackson*,
    768 F. Supp. 2d 34 (D.D.C. 2011) ....................................................... 27

*Newdow v. Bush*,
    355 F. Supp. 2d 265 (D.D.C. 2005) ....................................................... 28

*Pub. Citizen v. Nat'l Advisory Comm. on Microbiological Criteria for
    Foods*,
    886 F.2d 419 (D.C. Cir. 1989) ....................................................... 19, 20

*Sherley v. Sebelius*,
    644 F.3d 388 (D.C. Cir. 2011) ....................................................... 17, 31

*Syngenta Crop Protection, Inc. v. Drexel Chem. Co.*,
    655 F. Supp. 2d 54 (D.D.C. 2009) ....................................................... 11

*Washington Legal Foundation v. Sentencing Commission*,
    17 F.3d 1446, 1451 (D.C. Cir. 1994) ....................................................... 26

*Whitman-Walker Clinic, Inc. v. U.S. Dep't of Health & Human Servs.*,
    485 F. Supp. 3d 1 (D.D.C. 2020) ....................................................... 18

*Winter v. Nat. Res. Def. Council, Inc.,*
   555 U.S. 7 (2008) ................................................................... 17, 27, 30

*Wis. Gas. Co. v. FERC,*
   758 F.2d 669 (D.C. Cir. 1985) ................................................... 27

**Statutes**

5 U.S.C. § 551(1) ........................................................................ 12

5 U.S.C. § 1001(2)(A) ................................................................. 3

5 U.S.C. § 1001(2)(B) ........................................................... 13, 15

5 U.S.C. § 1001(2)(B)(ii) ........................................................... 3

5 U.S.C. § 1001(3) ...................................................................... 12

5 U.S.C. § 1001, et seq. ............................................................... 2

5 U.S.C. §§ 1004–1013 ............................................................... 3

5 U.S.C. § 1004(b)(2) ............................................................... 20

5 U.S.C. § 1007(a) ....................................................................... 3

5 U.S.C. § 1007(b) ................................................................... 3, 14

5 U.S.C. § 1008(c) ..................................................................... 14

5 U.S.C. § 1009(e) ..................................................................... 14

5 U.S.C. § 1014 ........................................................................... 3

5 U.S.C. § 1014(a) ....................................................................... 3

5 U.S.C. § 1014(a)(1) ....................................................... 3, 15, 25

5 U.S.C. § 1014(b)(1) ................................................... 21, 23, 24

5 U.S.C. § 1014(b)(1)(A) ..................................................... 21, 23

5 U.S.C. § 1014(b)(1)(B) ..................................................... 19, 20

5 U.S.C. § 1014(b)(3) ............................................................... 24

5 U.S.C. § 1014(b)(4) ................................................................................................ 25

12 Stat. 806 ................................................................................................................ 2

28 U.S.C. § 1361 ............................................................................................... 9, 10, 11

86 Stat. 770 (1972) .................................................................................................... 2

**Rules and Regulations**

41 C.F.R. Part 102-3 ................................................................................................. 27

41 C.F.R. § 102-3.40(a) ........................................................................................ 4, 13

41 C.F.R. § 102-3.180 ............................................................................................... 15

41 C.F.R. § 102-3.185(a)(1) ....................................................................................... 4

41 C.F.R. § 102-3.185(a)(2) ....................................................................................... 4

41 C.F.R. § 102-3.185(a)(2) subp.E ......................................................................... 4

41 C.F.R. § 102-3.185(b) .......................................................................................... 15

41 C.F.R. § 102-3.185(c) ..................................................................................... 4, 26

88 Fed. Reg. 70,516 (Oct. 11, 2023) ....................................................................... 29

# INTRODUCTION

The National Academy of Sciences is not a federal agency, and its committees are not federal advisory committees. The Academy is a private, tax-exempt organization that gives independent advice on science, engineering, and medicine. Committee members are not politicians or government officials; they are scientists, engineers, and policy experts who volunteer to serve in their individual, private capacities.

Sometimes the Academy's role as the nation's independent scientific advisor includes commenting on aspects of a federal agency's work, as it did here. But just because the Academy comments on a federal agency's work does not mean that it can be treated like a federal agency, or its committee members like agency employees. The Academy and the people who serve on its committees are still private citizens.

The Academy's status as a private entity matters here because plaintiff American Chemistry Council is bringing claims against the Academy under the Mandamus Act, and that Act applies only to federal officers, employees, and agencies, not to private citizens. Because the Academy is not a federal agency and the members of its committees are not federal officers or employees, ACC's Mandamus Act claims should be dismissed.

Even if its claims are not dismissed, ACC cannot show a "clear and indisputable" right to relief under the Mandamus Act, especially given the Academy's wide discretion to govern its committees. Nor can ACC prove irreparable harm from the Academy's advisory report, which does not directly affect it. Thus, even if its claims against the Academy survive, ACC's preliminary injunction motion should be denied.

1

## BACKGROUND

This memorandum is filed in support of the Academy's motion to dismiss and in opposition to ACC's preliminary injunction motion. For the part of this memorandum that supports the Academy's motion to dismiss, the Academy presumes the truth of the allegations in ACC's complaint. But no such presumption applies when the Academy is responding to ACC's preliminary injunction motion. To the contrary, ACC bears the burden of showing that it is entitled to a preliminary injunction. *Davis v. Pension Benefit Guarantee Corp.*, 571 F.3d 1288, 1292 (D.C. Cir. 2009).

### A.  The National Academy of Sciences is an independent, nongovernmental research institution.

The National Academy of Sciences was created in 1863 by an Act of Congress signed into law by Abraham Lincoln. ECF 15, Am. Compl. ¶ 30; *see* 12 Stat. 806. The Academy is and always has been "a private, nongovernmental institution" that exists "to advise the nation on issues related to science and technology." Am. Compl. ¶ 30. "Its primary purpose is to provide independent, objective advice to inform policy with evidence." Am. Compl. ¶ 30. The Academy is also a private, tax-exempt organization under Section 501(c)(3) of the Internal Revenue Code. Declaration of Gregory H. Symmes ¶ 3.

The Federal Advisory Committee Act—FACA, for short—was passed more than 100 years after the Act that created the Academy. 86 Stat. 770 (1972); *see* 5 U.S.C. § 1001, et seq. As its name suggests, FACA primarily governs the creation and use of federal "advisory committees," which FACA defines to include groups that are "established or utilized to obtain advice or recommendations for the President or one or more agencies or officers of Federal Government

. . . ." 5 U.S.C. § 1001(2)(A). But the Academy's committees are not a federal advisory committees under FACA. Indeed, FACA expressly "excludes" any "committee that is created by the National Academy of Sciences" from the statutory definition of "advisory committee." 5 U.S.C. § 1001(2)(B)(ii).

## B. FACA sets separate standards for the Academy's committees and federal advisory committees.

Even though it excludes the Academy's committees from the definition of "advisory committee," FACA contains some provisions—commonly called Section 15, and now codified in 5 U.S.C. § 1014—that apply only to the National Academy of Sciences and the National Academy of Public Administration. Under Section 15, federal agencies may not use "any advice or recommendation" developed by an Academy committee "under an agreement with an agency" unless the Academy has complied with certain requirements. 5 U.S.C. § 1014(a). But those requirements are separate and distinct from the more detailed and burdensome provisions of FACA that govern federal advisory committees. *Compare* 5 U.S.C. §§ 1004–1013. For example, FACA requires each agency to "establish uniform administrative guidelines and management controls" for its federal advisory committees and to "designate an Advisory Committee Management Officer" who "exercises control and supervision" over those committees. 5 U.S.C. § 1007(a), (b). By contrast, Section 15 rejects any such agency control over an Academy committee. Indeed, Section 15 bars agencies from using work produced by an Academy committee if that committee was "subject to any actual management or control by an agency or officer of the Federal Government." 5 U.S.C. § 1014(a)(1).

3

The General Services Administration has issued regulations addressing Section 15 that underscore this distinction. To start, the GSA regulations point out that committees created by the Academy "are not covered by the Act" or the regulations. 41 C.F.R. § 102-3.40(a). The GSA regulations also reiterate the ban on federal officers and agencies exercising "actual management or control" over the Academy's committees. 41 C.F.R. § 102-3.185(a)(1). Beyond that, the regulations say that agencies "should defer to the discretion of each academy to adopt policies and procedures that will enable it to comply substantially with the provisions of section 15[.]" 41 C.F.R. § 102-3.185(a)(2) & subp. E, app. A. Finally, the GSA regulations allow agencies to rely on the Academy's certification "that it has complied substantially" with those provisions. 41 C.F.R. § 102-3.185(a)(2). If an agency follows these regulations, it "may enter into contracts, grants, and cooperative agreements" with the Academy that allow the agency to seek the Academy's "advice or recommendations." 41 C.F.R. § 102-3.185(c).

## C.   The Academy formed a committee to review certain aspects of EPA's draft formaldehyde assessment.

This case arises out of a contract between the Academy and the U.S. Environmental Protection Agency. EPA entered that contract as part of its long-running effort to evaluate the health effects of formaldehyde, a chemical that is used in many contexts, including housing, agriculture, and electric vehicles. Am. Compl. ¶¶ 6, 41. EPA's efforts to study formaldehyde came to wide public attention in 2010, when the agency released a toxicological assessment of the chemical. Am. Compl. ¶ 6. The Academy, under an earlier contract with EPA, provided an independent review of EPA's 2010 assessment that was generally perceived as critical of the agency's work. Am. Compl. ¶¶ 6, 44–45.

4

As ACC's complaint tells it, the Academy's review sent EPA back to the drawing board. Am. Compl. ¶¶ 7, 46. In September 2021, while it worked on a revised formaldehyde assessment, EPA entered into a new contract with the Academy. Am. Compl. ¶ 7. Under that new contract, the Academy was asked to form a committee to review certain aspects of EPA's revised draft formalde-hyde assessment. Am. Compl. ¶¶ 7–8, 48. The contract also charged the com-mittee with "assessing whether EPA's draft document adequately and trans-parently evaluated the scientific literature, used appropriate methods," and presented conclusions "supported by the scientific evidence." National Acade-mies of Sciences, Engineering & Medicine, *Review of EPA's 2022 Draft Formal-dehyde Assessment* at 4.[1] At the same time, the committee's contractual charge did not allow it to "conduct its own hazard assessment of formaldehyde" or "address the broader aspects of" EPA's program. *Id*. at 4.

No one disputes that the Academy formed the committee requested by EPA. Am. Compl. ¶ 8. But ACC's complaint alleges that the committee's for-mation and operation violated FACA Section 15 in several ways. Am. Compl. ¶¶ 8–12. Those allegations include claims that the Academy's committee was not "fairly balanced," that some of its members had undisclosed conflicts of interest that "limit[ed] their independence and impartiality," that the commit-tee did not allow "meaningful public input," and that EPA "exercised control over" the committee. Am. Compl. ¶¶ 9–12. The same claims appear in ACC's preliminary injunction arguments. *See* ECF 17-1, Mem. in Support of Mtn. for Preliminary or Permanent Injunctive Relief (PI Mem.) at 1, 21–37.

---

[1] Available at https://nap.nationalacademies.org/catalog/27153/review-of-epas-2022-draft-formaldehyde-assessment. ACC attached the committee's report as Exhibit A to its preliminary injunction motion.

**D.  The Academy's committee, complying with Academy policies, reviewed EPA's formaldehyde assessment.**

Though ACC claims that the Academy violated FACA Section 15, it admits that the Academy certified its substantial compliance with the statute. Am. Compl. ¶ 9. The Academy made that certification because it followed its policies in forming its formaldehyde committee and in conducting its review. *See* Symmes Decl. ¶¶ 16–32.

To start, the Academy followed its normal policies and procedures in forming and screening its formaldehyde committee, bringing in outside experts from around the country. Symmes Decl. ¶ 16. Those policies and procedures are described in a publicly available document that requires committees to be "qualified, inclusive, and appropriately balanced" and committee members to be "free of conflicts of interest," as well as "transparent" and "independent." National Academies of Sciences, Engineering, and Medicine, *Policy on Composition and Balance, Conflicts of Interest, and Independence for Committees Used in the Development of Findings, Conclusions, and Recommendations* (Academy Policy) at 1; *see* Symmes Decl. ¶ 9 & Ex. A. To achieve those goals, the Academy's policy explains how the Academy balances its committees, defines disqualifying financial conflicts of interest, requires disclosure of relevant relationships and publications, and mandates independence from the sponsoring agency. *See* Symmes Decl. Ex. A at 1–5.

Having formed a committee in substantial compliance with its policies and procedures, the Academy fulfilled its contract with EPA. Symmes Decl. ¶ 28, 29. It published a 175-page review of EPA's draft formaldehyde assessment in August 2023. Am. Compl. ¶ 8; *see Review of EPA's 2022 Draft Formaldehyde*

*Assessment*. As even ACC admits, the committee's report was at times critical of EPA's draft assessment. *See* Am. Compl. ¶ 24 (referring to "the [EPA] Assessment's deficiencies as identified in the [Academy's] Report"). The report was also clear about the scope of the Academy's contract with EPA. *Review of EPA's 2022 Draft Formaldehyde Assessment* at 4; *see* Am. Compl. ¶ 53. And nothing in the committee's report requires EPA to adopt any part of the report or to take any regulatory action. Symmes Decl. ¶¶ 32-33.

7

# ARGUMENT

This memorandum both supports the Academy's motion to dismiss ACC's complaint and responds to ACC's preliminary injunction motion. Because ACC cannot use the Mandamus Act against the Academy or its formaldehyde committee, ACC's complaint should be dismissed and its preliminary injunction motion denied as moot. But even if the complaint is not dismissed, ACC cannot show the likely success on the merits or the irreparable injury necessary to win a preliminary injunction.

## I. Because the Mandamus Act cannot be used against a private institution like the Academy, ACC's claims should be dismissed.

The Academy moves to dismiss the claims against it for lack of jurisdiction under Rule 12(b)(1) and for failure to state a claim under Rule 12(b)(6). For now, the standard of review under these two subsections of Rule 12 is the same: The Court should accept as true the complaint's factual claims and decide the motion to dismiss as a matter of law. *See Jerome Stevens Pharm., Inc. v. FDA*, 402 F.3d 1249, 1253–54 (D.C. Cir. 2005) (Rule 12(b)(1) standard); *Hurd v. Dist. of Col.*, 864 F.3d 671, 678 (D.C. Cir. 2017) (Rule 12(b)(6) standard). ACC, as the party seeking federal jurisdiction, must prove that it exists. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994).

### A. ACC brings its claims under the Mandamus Act because FACA does not create a right of action.

ACC brings six counts alleging that the Academy violated FACA Section 15. Each of these counts cites 28 U.S.C. § 1361—commonly called the Mandamus Act—as its source of jurisdiction. Am. Compl. at 46–53; *see id.* ¶ 31. By

relying on the Mandamus Act in this way, ACC concedes to the strong line of precedent in this Court holding that FACA does not create an independent cause of action. *See Dunlap v. Presidential Advisory Comm. on Election Integrity*, 464 F. Supp. 3d 247, 265 (D.D.C. 2020) (citing cases). Because FACA does not create a cause of action, claims alleging violations of FACA must be "redressed under other statutes"—potentially including the Mandamus Act— "as appropriate." *Id.*

The Mandamus Act confers original district court jurisdiction over actions "in the nature of mandamus" that are brought "to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff." 28 U.S.C. § 1361. That jurisdiction, however, is "strictly confined." *In re Cheney*, 406 F.3d 723, 729 (D.C. Cir. 2005). The "mandamus-type relief" that the Mandamus Act offers is "drastic"—available only in those "extraordinary situations" when the plaintiff's right to relief is "clear and indisputable." *Id.* at 728, 729. Even then, the district court's decision to grant relief is "discretionary." *Id.* at 729.

Against this backdrop, ACC asks the Court to use its jurisdiction and power under the Mandamus Act to compel the Academy to perform the duties that ACC alleges FACA imposes. Am. Compl. ¶¶ 128–60. But even if ACC were right that the Academy failed to perform certain FACA-imposed duties, its claim fails at a more basic level: The Mandamus Act grants jurisdiction only to compel a federal "officer," "employee," or "agency" to perform its duties, and the Academy does not fall into any of those categories.

**B. The Mandamus Act applies only to federal officers, employees, and agencies.**

ACC admits that the Academy is a "private, nongovernmental institution" that offers "independent, objective advice." Am. Compl. ¶ 30. Nothing in ACC's complaint alleges that either the Academy or the Academy's formaldehyde committee qualifies as an officer, employee, or agency of the federal government. And since the Mandamus Act applies only to federal officers, employees, and agencies, it cannot be applied against the Academy.

The text of the Mandamus Act is plain: "The district courts shall have original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff." 28 U.S.C. § 1361. This grant of jurisdiction is narrow and specific. If the plaintiff cannot establish "a clear and indisputable duty, owed to them *by the federal government,*" their claims for mandamus-type relief under the Act should be dismissed. *In re Cheney*, 406 F.3d at 731 (emphasis added).

Because the Mandamus Act so clearly limits jurisdiction to duties owed by the federal government, few have tried to use it against private parties. But when they have, those efforts have failed. In one such case, a dispute involving the federal law that governs pesticides, this Court held that the Mandamus Act did not confer jurisdiction when the plaintiff's claims were against "private, not federal, entities." *Syngenta Crop Protection, Inc. v. Drexel Chem. Co.*, 655 F. Supp. 2d 54, 62 (D.D.C. 2009) (Bates, J.). Likewise, in a case seeking relief against a judgment debtor who was in federal witness protection, the Court held that the Mandamus Act "allows courts 'to compel an *officer or employee* of the United States" to perform a duty; it "does not apply to private citizens."

10

*González-Vera v. Townley*, 83 F. Supp. 3d 306, 314 (D.D.C. 2015) (Bates, J.) (emphasis in original).

Simply put, the Mandamus Act means what it says. If a plaintiff can clear the high bar of showing that it was owed a duty by a federal officer, employee, or agency, the district court has jurisdiction over that officer, employee, or agency. But if the claim is against a private entity, the Mandamus Act does not apply.

### C. Since no one on the Academy's committee is a federal officer or employee, the Mandamus Act does not apply.

Even though its substantive claims against the Academy are brought under the Mandamus Act, ACC never alleges that the Academy is a federal agency. Nor could it. Under FACA, an agency must be "an authority of the Government of the United States." 5 U.S.C. § 1001(3) (cross-referencing 5 U.S.C. § 551(1)). The Academy, as a "private, nongovernmental institution," does not qualify. *See* Am. Compl. ¶ 30.

Neither does ACC claim that any member of the Academy's formaldehyde committee is a federal officer or employee. A review of the publicly available bios for the thirteen committee members explains this silence: Not one of the committee members is a federal officer or employee. *See* Symmes Decl. ¶ 21 & Ex. B. The members are instead a committee of respected scientists, none of whom works for the federal government. Symmes Decl. ¶ 16, 21 & Ex. B. Indeed, anyone who serves on a committee formed by the Academy does so in their individual capacity, not as a representative of their employer or institution, including the federal government. Symmes Decl. ¶ 14. These private

11

citizens are not subject to a court order issued using Mandamus Act jurisdiction. *González-Vera*, 83 F. Supp. 3d at 314.

Because the Academy is not a federal agency, and no one on its formaldehyde committee is a federal officer, employee, or representative of the federal government, the Mandamus Act does not create jurisdiction here.

### D. Because the Academy's committee is not a federal advisory committee, Mandamus Act precedent does not apply.

At this point, ACC may object that Mandamus Act jurisdiction has been used in the past to enforce duties that FACA imposes on federal advisory committees. How is this case different?

A Mandamus Act-based claim against the Academy is different because a committee formed by the Academy is not a federal advisory committee under FACA. Indeed, FACA explicitly says that "[t]he term 'advisory committee' excludes . . . a committee that is created by the National Academy of Sciences . . . ." 5 U.S.C. § 1001(2)(B); *see* 41 C.F.R. § 102-3.40(a) (excluding the Academy's committees from the rule's coverage); *NAACP Legal Def. & Educ. Fund v. Barr*, 496 F. Supp. 3d 116, 123 (D.D.C. 2020) (Bates, J.) ("While the definition of 'advisory committee' is broad, it excludes" committees "created by the National Academy of Sciences[.]"). That exclusion shields the Academy's committees from the parts of FACA that allow Mandamus Act jurisdiction over federal advisory committees.

To understand why federal advisory committees can be subject to Mandamus Act suits while the Academy's committees cannot, recall that a federal advisory committee is subject to the "control and supervision" of an "Advisory Committee Management Officer" who is put in place by the "head of each

agency." 5 U.S.C. § 1007(b). A federal advisory committee must also file a charter with the agency identifying "the agency or official to whom the committee reports." *Id.* § 1008(c). Further, a "designated officer or employee of the Federal Government" must "chair or attend each meeting of each advisory committee" and have the power "to adjourn any such meeting." *Id.* § 1009(e). This "designated federal officer serves as the primary contact for members of the public who seek more information about the advisory committee's meetings and hearings." *NAACP*, 496 F. Supp. 3d at 123.

These features of federal advisory committees explain why some courts have found Mandamus Act jurisdiction in FACA cases. In *Electronic Privacy Information Center v. National Security Commission on Artificial Intelligence*, for example, the court granted mandamus relief against a federal advisory committee whose members were statutorily defined as "Federal employees." 466 F. Supp. 3d 100, 119 (D.D.C. 2020) (quoting Pub. L. No. 115-232 § 1051(a)(4)(A), (6)–(7)). This Court similarly found in *NAACP* that the plaintiff was entitled to mandamus-type relief against the chair and vice-chair of an advisory committee, both of whom were federal officials. 496 F. Supp. 3d at 145 (granting relief against Department of Justice officials Phil Keith and Katharine Sullivan). And while the Court jointly ordered relief against the committee itself, that makes practical sense when the committee had not complied with FACA's requirement to "assign a designated federal officer . . . to ensure compliance with FACA[.]" *Id.* at 143, 145.

No similar requirements apply to the Academy. Just the opposite: FACA excludes the Academy's committees from its definition of federal "advisory committee." 5 U.S.C. § 1001(2)(B). Thus, "no part of [FACA] other than section

15 applies to any committee created by" the Academy. 41 C.F.R. § 102-3.180. And if an agency intends to rely on advice given by an Academy-created committee, that committee "must be subject to both actual management and control by [the Academy] and not by the agency." 41 C.F.R. § 102-3.185(b); *see* 5 U.S.C. § 1014(a)(1) (barring agency use of an Academy committee's advice if that committee was "subject to any actual management or control by" a federal agency or officer). In this way, FACA recognizes the Academy's independence and leaves agencies with no incentive to manage or control the Academy's committees.

Faced with these distinctions between the Academy's committee and those federal advisory committees that have been successfully sued under the Mandamus Act, ACC may argue that there must be some way to ensure the Academy's compliance with Section 15. But Congress did not intend that every alleged statutory violation could be remedied through a lawsuit. "If the text of a statute does not provide a cause of action, there ordinarily is no cause of action." *Johnson v. Interstate Mgmt. Co., LLC*, 849 F.3d 1093, 1097 (D.C. Cir. 2017). And FACA, as ACC must admit, contains no cause of action. *Dunlap*, 464 F. Supp. 3d at 265.

*   *   *

No member of Academy's formaldehyde committee was a federal official or a federal employee, or even a representative of a federal agency. And, by statute, the Academy's committee was not a federal advisory committee. As a result, neither the plain language of the Mandamus Act nor this Court's precedent addressing federal advisory committees supports ACC's claims against the Academy. Those claims should thus be dismissed.

14

**E.  ACC cannot state a stand-alone claim under the Declaratory Judgment Act.**

In a count separate from its Mandamus Act claims, ACC alleges that when "statutory duties are violated, courts may also act pursuant to the Declaratory Judgment Act." Am. Compl. ¶ 170. On that basis, ACC seeks a judicial declaration that the Academy violated FACA. But the Declaratory Judgment Act does not work that way.

The Declaratory Judgment Act "is procedural only." *Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 240 (1937). A declaratory judgment claim thus "is not cognizable as a separate cause of action, but is more properly included in the[] prayer for relief." *Intelsat USA Sales Corp. v Juch-Tech, Inc.*, 935 F. Supp. 2d 101, 120 (D.D.C. 2013) (dismissing a declaratory judgment count) (citation omitted). In other words, "the Declaratory Judgment Act 'is not an independent source of federal jurisdiction.'" *Ali v. Rumsfeld*, 649 F.3d 762, 778 (D.C. Cir. 2011) (quoting *C&E Servs. v. D.C. Water & Sewer Auth.*, 310 F.3d 197, 201 (D.C. Cir. 2002)).

Because the Declaratory Judgment Act does not create federal jurisdiction, ACC's claim under that act cannot stand on its own. Indeed, it should have been part of the prayer for relief, not a separate count. *Intelsat*, 935 F. Supp. 2d at 120. In any case, ACC cannot bootstrap its way into federal court using a declaratory judgment claim. *Ali*, 649 F.3d at 778. Since its Mandamus Act claims should be dismissed, its Declaratory Judgment Act claim should be too.

## II. Even if its claims against the Academy survive, ACC is not enti-
## tled to a preliminary injunction.

More than two months after the Academy released its report on EPA's draft formaldehyde assessment, more than a month after amending its complaint, and without any explanation for its delay, ACC sought the urgent relief of a preliminary injunction. Of course, if ACC's claims against the Academy are dismissed, any effort to enjoin the Academy would be denied. But even if ACC's claims survive, its preliminary injunction motion seeks "an extraordinary remedy that may only be awarded" if ACC makes "a clear showing" that it "is entitled to such relief." *Sherley v. Sebelius*, 644 F.3d 388, 392 (D.C. Cir. 2011) (quoting *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008)). Specifically, ACC must show that: (1) it is "likely to succeed on the merits"; (2) it is "likely to suffer irreparable harm" absent an injunction; (3) "the balance of equities tips in [its] favor"; and (4) "an injunction is in the public interest." *Winter*, 555 U.S. at 20. ACC can make none of these showings.

### A. ACC is unlikely to succeed on the merits.

ACC offers three reasons why the Academy violated FACA. First, it alleges that the Academy's formaldehyde committee was not fairly balanced. Second, it alleges that the committee's members had unaddressed conflicts of interest. Third, it alleges that the Academy violated FACA's public disclosure requirements. Beyond those claims, ACC says that EPA violated FACA by controlling the Academy's committee. Because none of these arguments is likely to succeed on the merits, and ACC cannot justify the drastic, inapposite remedy available under the Mandamus Act, ACC's preliminary injunction motion should be denied.

### 1.  ACC is unlikely to make the extraordinary showing required by the Mandamus Act.

Any assessment of likely success on the merits starts with the merits' legal standard. *See Whitman-Walker Clinic, Inc. v. U.S. Dep't of Health & Human Servs.*, 485 F. Supp. 3d 1, 46 (D.D.C. 2020) (assessing the likelihood of success while "[m]indful of the 'narrow' scope of arbitrary-and-capricious review"). The question at this stage is not which party has marginally better merits arguments, but whether the moving party is *likely* to win on the merits. And when the moving party faces a difficult legal standard on the merits, its baseline chances of winning are low.

The legal standard under the Mandamus Act is daunting. The Mandamus Act's "drastic" remedy is available only in "extraordinary situations," when the plaintiff's right to relief is "clear and indisputable." *In re Cheney*, 406 F.3d. at 728, 729. And even then, relief remains discretionary. *Id.* at 729. Taking an outside view, that standard makes ACC less likely to prevail on the merits. Its preliminary injunction motion should be viewed through that lens.

### 2.  The Academy's formaldehyde committee was fairly balanced.

ACC's lead argument on the merits is that the Academy's committee was not "fairly balanced." PI Mem. at 21. By that, ACC means that the committee seated too many non-occupational epidemiologists, too few occupational epidemiologists, and no one "with an industry perspective." PI Mem. at 21–23. ACC also points to what it calls a "lack of viewpoint balance." PI Mem. at 23–24. But none of these points would justify the extraordinary relief available under the

Mandamus Act, and they all ignore the Academy's discretion under Section 15 of FACA.

Section 15 requires the Academy to "make its best efforts to ensure that . . . the committee membership is fairly balanced as determined by the Academy to be appropriate for the functions to be performed." 5 U.S.C. § 1014(b)(1)(B). For at least three reasons, this language gives the Academy lots of leeway.

First, the language makes clear that a fairly balanced committee is not a black and white requirement. Rather, the Academy need only make its "best efforts to ensure" a "fairly balanced" committee. To that end, the Academy applies a policy on composition and balance that considers the expertise, perspective, objectivity, and diversity of the committee's members, as well as their membership in the Academy. Symmes Decl. ¶ 9 & Ex. A at 1–2. By applying this policy, the Academy made its best efforts to fairly balance its formaldehyde committee. Symmes Decl. ¶¶ 16–22. Those efforts—not the committee's actual makeup—are what satisfy Section 15.

Second, Section 15 does not define "balance." Instead, it gives the Academy the power to "determine[]" what qualifies as a fairly balanced committee. 5 U.S.C. § 1014(b)(1)(B). As Judge Silberman observed in a related context, "[t]he determination of how the 'fairly balanced' membership of an advisory committee . . . is to be achieved, necessarily lies largely within the discretion of the official who appoints the committee." *Pub. Citizen v. Nat'l Advisory Comm. on Microbiological Criteria for Foods*, 886 F.2d 419, 424 (D.C. Cir. 1989) (Silberman, J., concurring). Judge Edwards, writing separately in the same case, agreed: "[T]he difficulty of determining what precisely constitutes a 'fair balance' may incline courts to be deferential in reviewing the composition of

18

advisory committees." *Id.* at 434. So when the Academy worked to ensure that its formaldehyde committee was fairly balanced, Symmes Decl. ¶¶ 16–22, it was using the discretion to define balance that Section 15 expressly grants it.

Third, the only part of FACA that applies to the Academy—Section 15— does not require a fair balance of viewpoints, as ACC suggests. PI Mem. at 23. That requirement is in a different part of FACA, which says that committees created by Congress must "be fairly balanced in terms of the points of view represented . . . ." 5 U.S.C. § 1004(b)(2). The "fairly balanced" requirement that applies to the Academy, by contrast, rests solely on what the Academy determines "to be appropriate for the functions to be performed." 5 U.S.C. § 1014(b)(1)(B). Points of view are not mentioned.

Addressing only the "fairly balanced" requirement that applies to federal advisory committees—not Section 15—this Court explained that "although the term 'fairly balanced' may be imprecise, it provides guidance at least in extreme cases." *NAACP*, 496 F. Supp. 3d at 134. And that case was extreme: a federal advisory committee "charged with examining broad issues of policing in today's America [was] composed entirely of past and present law enforcement officials." *Id.* at 144. As a result, there was "no dispute" that the committee was "not 'fairly balanced.'" *Id.* at 143.

Here, even setting aside that Section 15 expressly gives the Academy discretion to "determine[]" whether its committees are fairly balanced, and that the Academy's committees are not federal advisory committees, ACC's claims of unfairness are nothing like those in *NAACP*. The Academy's review of EPA's draft formaldehyde assessment is not meant to address "broad issues" like policing in America. Instead, it is more like the "scientific peer review" in *Cargill,*

*Inc. v. United States*, 173 F.3d 323, 337 (5th Cir. 1999) (emphasis omitted). Because such a review "is politically neutral and technocratic," the Fifth Circuit found "no need for" broader representation on the committee. *Id.* The same logic applies to the Academy's committee here. The Academy has broad discretion to decide who should participate in a peer review of EPA's draft formaldehyde assessment. Neither ACC's opinions about who should have been on the committee, nor its critiques of the committee members' backgrounds and views, shows that the Academy failed to follow its procedures or abused its discretion, especially when the Mandamus Act requires that ACC have a "clear and indisputable" right to relief.

### 3. The members of the Academy's committee did not have any conflicts of interest.

ACC's next attacks focus directly on certain committee members. According to ACC, "at least three" members had "apparent conflicts of interest" that call their objectivity into question. PI Mem. at 1, 26. Again, however, these claims do not withstand scrutiny, much less suggest that ACC can win the extraordinary relief available under the Mandamus Act.

It is true that Section 15 requires the Academy to screen committee members for any "conflict of interest that is relevant" to the committee's work. 5 U.S.C. § 1014(b)(1)(A). But like its fairly balanced provision, the Academy is required only to "make its best efforts to ensure that" committee members do not have a conflict. 5 U.S.C. § 1014(b)(1). That is just what the Academy did.

The Academy has policies governing financial conflicts and relationship disclosures. *See* Symmes Decl. Ex. A at 2–4. Its financial conflicts policy prohibits committee members, certain immediate family members, and their employers

from having "a financial interest" in "the outcome of the committee's work." Symmes Decl. Ex. A at 2–3. The policy has a separate relationship focus that requires disclosure of a member's connections (within the last five years) to financially interested entities, or entities that have taken public positions on key issues, as well as any uncompensated consulting for a financially interested entity. Symmes Decl. Ex. A at 3–4. To be sure members are complying with these policies, the Academy requires each provisional committee member to disclose relevant information. Symmes Decl. ¶ 17. The Academy considers that information in selecting members, as well as other available information, including any relevant information received from the public. Symmes Decl. ¶¶ 20–22. Here, the Academy determined that no member of the formaldehyde committee had a financial conflict of interest under the Academy's policies and procedures. Symmes Decl. ¶ 19. That alone is enough to make it unlikely ACC will win on the merits, especially under the Mandamus Act.

Digging deeper changes nothing. ACC seems to believe that the Academy's policies should have required more disclosures. *See, e.g.*, PI Mem. at 26 (arguing that a committee member should have disclosed any participation in a group formed under a 2009 memorandum of understanding, even though the Academy's conflict of interest policy focuses on relevant relationships within the last five years); *id.* at 27 (arguing for determination of a conflict for relationships that do not qualify as a current conflict under the Academy's policy). But ACC fails to show—or even argue—that the Academy's policies fall short of the "best efforts" that FACA Section 15 requires. Similarly, while ACC complains that the committee's study director has conflicts of interest, PI Mem. at 29, Section 15 speaks only to conflicts of an "individual appointed to serve on

21

the committee." 5 U.S.C. § 1014(b)(1)(A). The study director does not serve on the committee. Symmes Decl. ¶ 23.

In sum, the Academy followed its conflict disclosure policies when it formed its formaldehyde committee. Symmes Decl. ¶¶ 17–22. The relationships that ACC alleges in its Amended Complaint did not have to be disclosed under those policies, and the selection of committee members is well within the Academy's discretion under Section 15. Symmes Decl. ¶¶ 18–19. So unless ACC can explain why the Academy's policies do not represent its "best efforts" to avoid "a conflict of interest that is relevant to" the committee's work—and why ACC has a "clear and indisputable" right to relief under the Mandamus Act—it is unlikely to win on the merits of this claim.

### 4. The Academy's committee properly disclosed information.

ACC also argues that the Academy violated several of Section 15's public disclosure requirements. Those arguments are best addressed one at a time.

To start, ACC claims that the Academy violated Section 15's requirement that it "provide public notice of the names and brief biographies" of committee members. 5 U.S.C. § 1014(b)(1); *see* PI Mem. at 32–33. But there is no dispute that the Academy published members' names and brief biographies. Symmes Decl. ¶ 21 & Ex. B. The problem, according to ACC, is that what the Academy published "was sparse and lacking in key details." PI Mem. at 32. When do "brief biographies" become too "sparse" to satisfy Section 15? ACC does not say. Indeed, what ACC wants—"relevant relationships, publications, grants, testimony, and public statements"—goes well beyond "brief biographies." PI Mem. at 32. ACC is thus unlikely to win on this claim.

22

ACC next claims that the Academy did not give the public "a reasonable opportunity" to "comment on" committee appointments "before they [were] made." 5 U.S.C. § 1014(b)(1); *see* PI Mem. at 33. But ACC admits both that the Academy gave all interested parties "20 days (14 working days)" to comment and that it timely filed its comments. PI Mem. at 8, 33. And it never mentions that FACA allows the Academy to forgo "prior comment" if it is "not practicable," thus giving the Academy broad discretion on this point. 5 U.S.C. § 1014(b)(1). Here too, ACC is unlikely to win.

Turning to the operation of the Academy's committee, ACC claims that the committee "failed to disclose materials presented" by people who were "not officials, agents, or employees" of the Academy. PI Mem. at 33. Here, ACC is relying on Section 15's requirement that "meetings of the committee" held "to gather data" from such outside witnesses must be "open to the public." 5 U.S.C. § 1014(b)(3). The same part of Section 15 requires the Academy to "make available to the public" any non-exempt "written materials presented to the committee" by outside witnesses. *Id.* But ACC does not focus on these statutory provisions. Instead, it complains that EPA was emailing an Academy employee about who should be a member of the committee. PI Mem. at 33–34. Those emails do not qualify as "meetings of the committee . . . to gather data." 5 U.S.C. § 1014(b)(3). Indeed, such comments about committee composition are directed to the Academy, not the committee. Symmes Decl. ¶ 27. Because Section 15 does not require the emails that ACC is worried about to be made public, ACC is unlikely to win this argument either.

Finally, ACC claims that the Academy "unlawfully withheld information about" two committee meetings discussing "composition, balance, and conflicts

of interest." PI Mem. at 34. Because those meetings did not involve data gathering, FACA required only that the Academy provide "a brief summary." 5 U.S.C. § 1014(b)(4). That summary, under Section 15, must "identify the committee members present, the topics discussed, materials made available to the committee, and other matters the Academy determines should be included." 5 U.S.C. § 1014(b)(4). The Academy provided exactly that. Symmes Decl. ¶ 25 & Ex. C. ACC's quarrel is thus with the discretion that Section 15 gives the Academy, not the Academy's summary. ACC may want to see more "information about the substance of the discussions," PI Mem. at 34, but Section 15 requires them to be given only "the topics discussed," 5 U.S.C. § 1014(b)(4). Once again, ACC is unlikely to win.

### 5. EPA did not manage or control the Academy's committee.

ACC's final merits argument is that EPA cannot rely on the Academy's formaldehyde review because the Academy's committee was subject to EPA's "actual management or control." 5 U.S.C. § 1014(a)(1); *see* PI Mem. at 34–38. ACC takes this view for two reasons. First, it claims that EPA "threatened the independence" of the Academy's committee by proposing a scope of work that did not let the committee comment on "broader aspects" of the EPA program. PI Mem. at 35. Second, ACC claims that "EPA exercised control over the committee by telling [the Academy] who it should appoint." PI Mem. at 36. Neither of these arguments amounts to a violation of Section 15's narrow "actual management or control" rule.

ACC relies on FACA's use of the phrase "actual management or control." But that phrase is far narrower than ACC would like it to be. Speaking of

actual management or control over federal advisory committees, the D.C. Circuit in *Washington Legal Foundation v. Sentencing Commission* observed that agencies have "every reason to be interested"—and even to "participate"—in a federal advisory committee's "deliberations." 17 F.3d 1446, 1451 (D.C. Cir. 1994). The court of appeals also acknowledged that an agency might even "exercise significant influence on those deliberations and the ensuing recommendations." *Id.* "But," it held, "influence is not control." *Id.*

Here, the Academy's independent committee was far less influenced by an agency than was the federal advisory committee in *Washington Legal Foundation*. No one who works for EPA sat on the Academy's committee or participated in its deliberations. Symmes Decl. ¶ 31; *compare Wash. Legal Found.*, 17 F.3d at 1450–51 (describing the role of DOJ officials on the committee). Knowing that, ACC turns its fire on the scope of the Academy's contract with EPA. PI Mem. at 35–36. But ACC cites no law that would prevent the Academy and an agency from defining a scope of study in a funding agreement. To the contrary, the whole notion of entering a "funding agreement" to seek the Academy's "advice or recommendations" under the GSA regulations implies that the agency can decide what questions to ask (and pay for). 41 C.F.R. § 102-3.185(c) (authorizing funding agreements).

Nor does anything in Section 15 or its implementing regulations prohibit an agency from suggesting committee members to the Academy. So long as "members of the committee are selected by the academy," and "meetings, deliberations, and the preparation of reports are all controlled by the academy," the GSA regulations allow agencies to use the committee's advice and recommendations. 41 C.F.R. Part 102-3, subp. E, App. A. That is what happened

here. The Academy routinely asks Academy members, Academy boards, sponsors, stakeholders, and the public for input on committee memberships. Symmes Decl. ¶ 16. But, despite ACC's insinuations, the Academy chose the members of its formaldehyde committee. Symmes Decl. ¶¶13, 14, 16. The Academy thus did not violate Section 15. ACC is unlikely to show otherwise, especially given the burdensome legal standard that applies under the Mandamus Act.

### B. ACC will not suffer irreparable harm without an injunction.

Merits aside, ACC cannot win an injunction without showing that it is "likely to suffer irreparable harm in the absence of preliminary relief." *Winter*, 555 U.S. at 20. This showing is essential: "The failure to demonstrate irreparable harm is 'grounds for refusing to issue a preliminary injunction, even if the other three factors . . . merit such relief.'" *Nat'l Mining Ass'n v. Jackson*, 768 F. Supp. 2d 34, 50 (D.D.C. 2011) (quoting *Chaplaincy of Full Gospel Churches v. England*, 454 F.3d 290, 297 (D.C. Cir. 2006)). More, "a litigant seeking a preliminary injunction must satisfy 'a high standard' for irreparable injury." *ConverDyn v. Moniz*, 68 F. Supp. 3d 34, 46 (D.D.C. 2014) (quoting *Chaplaincy of Full Gospel Churches*, 454 F.3d at 297). The moving party's injury must be "both certain and great" and "it must be actual and not theoretical." *Wis. Gas. Co. v. FERC*, 758 F.2d 669, 674 (D.C. Cir. 1985). ACC has not made any of these showings.

### 1. ACC's delay in seeking a preliminary injunction implies a lack of irreparable harm.

At the threshold, ACC's delay in seeking an injunction undercuts its irreparable injury claim. "An unexcused delay in seeking extraordinary injunctive

26

relief may be grounds for denial because such delay implies a lack of urgency and irreparable harm." *Dallas Safari Club v. Bernhardt*, 453 F. Supp. 3d 391, 403 (D.D.C. 2020) (quoting *Newdow v. Bush*, 355 F. Supp. 2d 265, 292 (D.D.C. 2005)). Indeed, "[t]he D.C. Circuit has held that a delay of forty-four days before bringing action for injunctive relief was 'inexcusable,' and 'bolstered' the 'conclusion that an injunction should not issue.'" *Id.* (quoting *Fund for Animals v. Frizzell*, 530 F.2d 982, 987 (D.C. Cir. 1975)).

Here, the Academy released its review of EPA's draft formaldehyde assessment on August 9, 2023. *See* PI Mem. at 1. ACC's preliminary injunction motion did not arrive until October 13—more than two months after the Academy's report was released and nearly a month after ACC amended its complaint. Nothing in ACC's papers explains why it waited, especially when it now says that "absent an injunction, EPA will immediately use" the Academy's report. PI Mem. at 38. As in *Dallas Safari Club*, this delay is itself a sign that ACC does not face irreparable harm. 453 F. Supp. 3d at 403.

### 2.  The Academy's review will not irreparably harm ACC or its members.

Setting aside ACC's delay, its claims against the Academy do not suggest any injury, much less an imminent and irreparable one.

To make its injury claim, ACC portrays the Academy's review as the first domino in a long causal chain. Next, it says, "EPA will immediately use" the Academy's review "to modify and then finalize" its formaldehyde assessment. PI Mem. at 38–39. Neither of those things has happened yet. Symmes Decl. ¶ 33. Nor does ACC explain how EPA will use the Academy's review as it modifies and finalizes its assessment. Even ACC admits that EPA will "consider[]

the comments" in the Academy's review and make changes "to address any concerns raised" before it issues a final assessment. PI Mem. at 39.

If EPA does modify and finalize its formaldehyde assessment, that alone would not qualify as irreparable harm to ACC. Rather, EPA will have to "use" its assessment "in ways that directly impact ACC and its members, including as a basis for regulations." PI Mem. at 40. But ACC never says how long it would take for such regulations to issue. A recent rule under the Toxic Substances Control Act—one of the statutes mentioned by ACC as a potential threat to its members, PI Mem. at 40—was proposed in June 2021 and finalized in October 2023, more than two years later. *See* 88 Fed. Reg. 70,516 (Oct. 11, 2023). That timeline is not atypical, especially for a complex rule. So it is hard to see how a hypothetical future rule governing formaldehyde is the kind of injury that warrants a preliminary injunction now.

ACC also mentions enforcement actions as a potential source of irreparable harm. *See* PI Mem. at 41–42. Again, however, this is little more than speculation. No injury to ACC or its members will occur unless EPA finalizes its formaldehyde assessment and then exercises its discretion to file an enforcement action. And ACC does not suggest that any of its members' activities would warrant such an action.

Similarly speculative is ACC's idea that EPA's formaldehyde assessment—once it is finalized—would cause "de-selection from the market" that harms its members. PI Mem. at 43. ACC never explains how this "de-selection" would happen or even what it means. If ACC is saying that customers would buy less formaldehyde after EPA finalizes its assessment, it offers no evidence of that phenomenon.

For all these reasons, ACC has failed to show that it is likely to suffer irreparable harm absent a preliminary injunction. That failure alone is grounds for denying ACC's motion.

### C. Both the balance of harms and the public interest weigh against an injunction.

The final showing that ACC must make to win a preliminary injunction is "that the balance of equities tips in [its] favor, and that an injunction is in the public interest." *Winter*, 555 U.S. at 20. ACC tries to make that showing by claiming that "the public interest is not served by allowing EPA" to use a formaldehyde review that "is the result of a process that violated FACA." PI Mem. at 44. But that claim turns on ACC's merits arguments. If the Court finds that ACC is unlikely to prevail on those arguments, then ACC has also failed to make a public interest showing.

ACC next claims that the public interest favors an injunction because the Academy's "imprimatur . . . carries great weight." But while it is true that the Academy's reports are often seen as important scientific resources, that importance argues against an injunction, not for one. Enjoining use of the Academy's work product—especially on arguments as thin as ACC's—would harm both the Academy and the public by stifling the public discourse that is a necessary part of scientific advancement.

Finally, ACC's motion asks the Court to require the Academy to add a "disclaimer" to its formaldehyde report, warning that the report was created in a way that did not comply with FACA. ECF 17, Motion for Preliminary or Permanent Injunctive Relief at 1. But ACC's memorandum in support of its motion does not mention this disclaimer request, much less explain what harm from

the report justifies a disclaimer. Because ACC must make a "clear showing" that it is entitled to an injunction, *Sherley*, 644 F.3d at 392, that failure alone is reason to reject its disclaimer request. What is more, ACC's silence leaves unanswered questions about how the Mandamus Act could be used to order the Academy to add a disclaimer to its report, or how such a disclaimer would be consistent with the First Amendment, which protects academic freedom as a "special concern." *Brandt v. Bd. of Educ.*, 480 F.3d 460, 467 (7th Cir. 2007).

The Academy is not a political or a government organization. It is a private, independent institution chartered during the Civil War to give the country objective advice on complex issues relating to science, engineering, and medicine. That is what it has been doing for the past 160 years, and that is what it did here. ACC's baseless attack on the Academy's independence and objectivity, now expressed in its request for a preliminary injunction, threatens harm to the Academy's mission, which is to provide independent scientific findings to sponsors and the public. That harm, on top of all the other reasons to reject ACC's arguments, weighs against granting a preliminary injunction.

## CONCLUSION

Plaintiff American Chemistry Council's claims against the National Academy of Sciences should be dismissed with prejudice for lack of jurisdiction and for failure to state a claim on which relief can be granted. ACC's motion for a preliminary injunction should be denied.


Dated: November 13, 2023

Respectfully submitted,

/s/ Jay C. Johnson
Michael C. Davis (D.C. Bar No. 485311)
Jay C. Johnson (D.C. Bar No. 487768)
VENABLE LLP
600 Massachusetts Ave., N.W.
Washington, DC 20001
Phone: 202-344-4545
Fax: 202-344-8300
mcdavis@venable.com
jcjohnson@venable.com

*Counsel for Defendant National Academy of Sciences*

**Certificate of Service**

I hereby certify that on November 13, 2023, I caused a copy of the forego-
ing to be served on all counsel of record via the Court's CM/ECF system.

/s/ Jay C. Johnson
Jay C. Johnson