**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

AMERICAN CHEMISTRY COUNCIL, INC.,

       Plaintiff,

   v.

NATIONAL ACADEMY OF SCIENCES,
*et al.*,

       Defendants.

Case No. 1:23-cv-02113-JDB

**FEDERAL DEFENDANTS' REPLY
IN SUPPORT OF MOTION TO DISMISS**

**TABLE OF CONTENTS**

INTRODUCTION ...........................................................................................................1

I.      PLAINTIFF LACKS STANDING TO SUE FEDERAL DEFENDANTS............2

        A.      Plaintiff's Alleged Informational Injury is Not Traceable to EPA
                And Cannot be Redressed by EPA.........................................................2

        B.      Plaintiff Lacks Organizational Standing to Sue Federal Defendants..........5

        C.      Plaintiff Lacks Associational Standing to Sue Federal Defendants ..........7

II.     PLAINTIFF FAILS TO STATE A CLAIM AGAINST FEDERAL
        DEFENDANTS AS A MATTER OF LAW.........................................................9

        A.      Plaintiff Fails to State a Claim that EPA "Managed or Controlled"
                the Committee........................................................................................10

        B.      Plaintiff's APA Claim Against Federal Defendants Must Be
                Dismissed Because It Does Not Challenge Any Final Agency
                Action....................................................................................................13

        C.      Plaintiff's Claim Against Federal Defendants Should be Dismissed
                because the United States has not Waived its Sovereign Immunity.........14

        D.      Plaintiff Fails to State a Claim Under the Mandamus Act......................15

CONCLUSION .........................................................................................................16

## TABLE OF AUTHORITIES

**CASES**

*Abigail All. for Better Access to Developmental Drugs v. Eschenbach*,
    469 F.3d 129 (D.C. Cir. 2006)...................................................................6

*Alabama-Tombigbee Rivers Coalition v. Department of Interior*,
    26 F.3d 1103 (11th Cir. 1994)..................................................................8

*Animal Legal Defense Fund v. Shalala*,
    53 F.3d 363 (D.C. Cir. 1995)....................................................................8

*Baptist Mem'l Hosp. v. Sebelius*,
    603 F.3d 57 (D.C. Cir. 2010)...................................................................15

*Bennett v. Spear*,
    520 U.S. 154 (1977)................................................................................13

*Byrd v. EPA*,
    174 F.3d 239 (D.C. Cir. 1999)..................................................................3

*Clapper v. Amnesty Int'l, USA*,
    568 U.S. 398 (2013)..............................................................................6, 7

*Dep't of Educ. v. Brown*,
    600 U.S. 551 (2023)..................................................................................2

*Env't Working Grp. v. U.S. Food & Drug Admin.*,
    301 F. Supp. 3d 165 (D.D.C. 2018)...........................................................6

*Equal Rts. Ctr. v. Post Props., Inc.*,
    633 F.3d 1136 (D.C. Cir. 2011).................................................................5

*Food & Water Watch, Inc. v. Vilsack*,
    808 F.3d 905 (D.C. Cir. 2015)................................................................6, 7

*Food Chem. News v. Young*,
    900 F.2d 328 (D.C. Cir. 1990)................................................................10

*Foretich v. United States*,
    351 F.3d 1198 (D.C. Cir. 2003).................................................................9

*Jud. Watch, Inc. v. Nat'l Energy Policy Dev. Grp.*,
    219 F. Supp. 2d 20 (D.D.C. 2002)...........................................................13

*Judicial Watch, Inc. v. United States Department of Commerce*,
    583 F.3d 871 (D.C. Cir. 2009)..................................................................3

*Jud. Watch, Inc. v. U.S. Dep't of Commerce,*
   736 F. Supp. 2d 24 (D.D.C. 2010) .......................................................................13

*Lujan v. Defs. of Wildlife,*
   504 U.S. 555 (1992)...................................................................................................2, 5

*Nat. Res. Def. Council v. Dep't of Interior,*
   410 F. Supp. 3d 582 (S.D.N.Y. 2019) ....................................................................7

*Nat. Res. Def. Council v. Pena,*
   147 F.3d 1012 (D.C. Cir. 1998) .............................................................................4

*Paracha v. Obama,*
   194 F. Supp. 3d 7 (D.D.C. 2016) ..........................................................................8

*People for the Ethical Treatment of Animals v. U.S. Dep't of Agric.,*
   797 F.3d 1087 (D.C. Cir. 2015)..............................................................................6

*Public Citizen v. DOJ,*
   491 U.S. 440 (1989)............................................................................................2, 3, 4

*Ranchers Cattlemen Action Legal Fund United Stockgrowers of Am. v.*
   *U.S. Dep't of Agric.,*
   35 F.4th 1225 (10th Cir. 2022) ..........................................................................10, 12

*Wash. Legal Found. v. U.S. Sentencing Comm'n,*
   17 F.3d 1446 (D.C. Cir. 1994) ...........................................................................10, 12

*West Virginia v. EPA (In re Murray Energy Corp.),*
   788 F.3d 330 (D.C. Cir. 2015)...............................................................................14

*Whitmore v. Arkansas,*
   495 U.S. 149 (1990)................................................................................................6

**STATUTES**

5 U.S.C. App. § 10(b)..............................................................................................3

5 U.S.C. § 1014(a)..................................................................................................14

**REGULATIONS**

41 C.F.R. Part 102-3, subp. E, App. A....................................................................11

Federal Advisory Committee Management,
   66 Fed. Reg. 37728 (July 19, 2001) .....................................................................11

**LEGISLATIVE MATERIALS**

*Fed. Advisory Comm. Act: Hearing Before the Subcomm. on Gov't Mgmt.,*
   *Info., and Tech. of the Comm. on Gov't Reform and Oversight H. of Reps.,*
   105th Cong. 3 (1997) .......................................................................................10, 11

## INTRODUCTION

Plaintiff's Complaint alleges only a single cause of action against Federal Defendants—a challenge to EPA's hypothetical future reliance on the NAS committee's report ("NAS Report") under FACA and the APA. That claim fails as a matter of law, and Plaintiff's opposition does nothing to remedy the multiple fatal flaws that Federal Defendants identified in their motion to dismiss. Nor could it.

As a threshold matter, Plaintiff is unable to shore up its standing arguments. Plaintiff still does not explain how it can establish an informational injury that is traceable to or redressable by Federal Defendants based solely on the NAS committee's alleged FACA violations. Plaintiff also fails to meaningfully engage with Federal Defendants' argument that it has not identified any action actually taken by EPA that has harmed Plaintiff's organizational interests or its members in a concrete or imminent way. Instead, Plaintiff's only cause of action against Federal Defendants is based solely on speculation about hypothetical steps EPA may take in reliance on the NAS Report at some point in the future. Plaintiff's conjecture about what EPA will do in the future is indisputably insufficient to support organizational or associational standing.

Nor has Plaintiff persuasively responded to Federal Defendants' argument that the complaint fails to state a claim against Federal Defendants under the APA. First, Plaintiff doubles down on its argument that EPA exercised improper "management and control" over the NAS committee without grappling with the relevant test that applies to that question. The allegations in Plaintiff's Complaint do not come close to meeting the D.C. Circuit's extremely high bar for "management and control" within the meaning of FACA. Second, Plaintiff still fails to challenge any event that could be deemed final agency action and thus subject to APA review. Plaintiff has not alleged that EPA itself has taken any steps based on the NAS Report and even if it did, that

1

would still only be an interlocutory step in the agency's multi-step IRIS assessment process—not a final agency determination giving rise to rights and obligations, as is required.

Finally, Plaintiff's eleventh-hour attempt to assert a new claim against Federal Defendants based on the Mandamus Act in their opposition brief cannot stand. Because Plaintiff did not plead a mandamus claim against Federal Defendants, it is not properly before the Court. But in any event, Plaintiff could not establish it is entitled to such extraordinary relief. Accordingly, Plaintiff's claims against Federal Defendants should be dismissed.

## I.   PLAINTIFF LACKS STANDING TO SUE FEDERAL DEFENDANTS

### A.   Plaintiff's Alleged Informational Injury is Not Traceable to EPA And Cannot be Redressed by EPA

As detailed in Federal Defendants' opening brief, Plaintiff has not (and cannot) establish any "informational injury" that is traceable to or redressable by EPA. Fed. Defs.' Combined Mem. in Supp. of Mot. to Dismiss & Opp'n to Pl.'s Mot. for Prelim. Inj., ECF No. 22 ("Fed. Defs.' Br.") at 14–15. On the contrary, any alleged informational injury is based entirely on the actions of NAS, which is a separate private entity. *See Dep't of Educ. v. Brown*, 600 U.S. 551, 561 (2023) (plaintiff must show injury is "'fairly traceable to the challenged action *of the defendant*,' meaning that 'there must be a causal connection between the injury and the conduct complained of.'") (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992)) (emphasis added). Nothing in Plaintiff's opposition alters this conclusion.

First, Plaintiff argues that the NAS committee's actions are traceable to EPA because courts "have found standing to sue an executive agency under FACA even when the committee was convened by a *private* entity at the government's request." Pl.'s Reply in Supp. of Mot. for Prelim. Inj. & Resp. to Mot. to Dismiss, ECF No. 24 ("Pl.'s Opp. Br.") at 34. But all of the cases Plaintiff cites for this proposition are inapposite. In *Public Citizen v. DOJ*, 491 U.S. 440 (1989),

the Supreme Court considered whether the plaintiffs' informational injury was *redressable* by a decision in their favor, not whether the advisory committee's actions were *traceable* to the agency. 491 U.S. at 448–49.  Plaintiff's reliance on *Judicial Watch, Inc. v. United States Department of Commerce*, 583 F.3d 871 (D.C. Cir. 2009), and *Byrd v. EPA*, 174 F.3d 239 (D.C. Cir. 1999), is similarly misplaced.  Those cases stand for the unremarkable proposition that where an agency "directly caused [a plaintiff's] informational injury," it can be sued for its independent violation of FACA.  *Byrd*, 174 F.3d at 243.  Neither case supports Plaintiff's novel legal theory that an agency can be sued based solely on an independent, private committee's alleged unlawful action.[1]

In *Judicial Watch*, the D.C. Circuit found that the Department of Commerce was "subject to an array of FACA obligations concerning the [advisory committee] that [were] entirely within its power to discharge," and that the agency failed to discharge its "duty under 5 U.S.C. App. § 10(b) to make available for public inspection transcripts or minutes of meetings of [its advisory committees]."  583 F.3d at 873.  The court therefore determined that plaintiffs had standing to sue Commerce for the agency's own violations of FACA.  *Id.*  Similarly, in *Byrd*, the D.C. Circuit found that *the agency* "den[ied] [plaintiff] timely access to the [advisory committee's] written comments and premeeting notes" and thereby "directly caused his informational injury."  174 F.3d at 243.  The principles in *Judicial Watch* and *Byrd* do not apply here, where Plaintiff does not allege that EPA "directly caused" Plaintiff's informational injury, *Byrd*, 174 F.3d at 243, or that EPA has an independent "FACA obligation . . . that is entirely within its power to discharge," *Jud. Watch*, 583 F.3d at 873.  Because NAS—not EPA—created the committee and its protocols, and

---

[1] As previously stated, to the extent Plaintiff may suggest that EPA is vicariously liable for the NAS committee's actions because it exercised "management or control" over the committee, Plaintiff has not alleged any facts that could support that conclusion.  Fed. Defs.' Br. at 15 n.4; *see also* section II.A below.

conducted the peer review at issue, Compl. ¶¶ 46–60, any informational injury caused by the NAS committee is not traceable to EPA.

Second, Plaintiff fails to address, much less distinguish, binding D.C. Circuit case law, which holds that an injury based on denial of access to committee meetings and documents cannot be redressed by a use injunction that does not remedy the past lack of access. *See* Fed. Defs.' Br. at 15–16 (discussing *Nat. Res. Def. Council v. Pena*, 147 F.3d 1012, 1014 (D.C. Cir. 1998)). Instead, Plaintiff claims that *Public Citizen* is the controlling case. Pl.'s Opp. Br. at 34. But the redressability issue in *Public Citizen* was a very specific one that is different from the argument EPA makes here: the American Bar Association argued that the committee meetings the plaintiffs sought to attend and the committee minutes and records the plaintiffs wished to review would likely be exempt from public disclosure requirements under FACA, and that the alleged harm from being denied access to the meetings and records was therefore not redressable by a decision in the plaintiffs' favor. 491 U.S. at 449. The Court held that the harm was indeed redressable because *some* of the meetings and records would be subject to disclosure under FACA, and other FACA requirements would apply to the committee if it was determined to be an advisory committee subject to FACA. *Id*. at 450. In contrast here, the requested injunctive relief against the Federal Defendants—"enjoining EPA from accepting, publishing, using, or relying upon the Report"— would not provide Plaintiff with representation on the NAS committee or access to information about the NAS committee's review (the asserted FACA violations). Compl., Prayer for Relief (e).

Finally, Plaintiff argues that declaratory relief would redress its alleged informational and representational injuries because a declaration that the NAS Report was developed in violation of FACA would give Plaintiff ammunition for opposing any use by EPA of that report or force NAS to redo its work in compliance with FACA. Pl.'s Opp. Br. at 35. But even assuming *arguendo*

that Plaintiff were entitled to declaratory relief based on informational or representational injuries arising from NAS's alleged FACA violations, that would not redress any harm that is traceable *to Federal Defendants'* conduct. This is because, as discussed below, it was NAS—not Federal Defendants—who convened and controlled the committee and thus were in a position to provide information on its behalf. *See infra* Part II.A; *see also* Fed. Defs.' Br. at Part II.A. In other words, declaratory relief with respect to Plaintiff's FACA claims solely against NAS could not be used to manufacture standing with respect to Federal Defendants.

B. Plaintiff Lacks Organizational Standing to Sue Federal Defendants

Plaintiff also fails to meet its burden to establish organizational standing, which requires it to show: (1) that the agency's action "injured the [organization's] interest"; and (2) that the organization "used its resources to counteract that harm." *Equal Rts. Ctr. v. Post Props., Inc.*, 633 F.3d 1136, 1140 (D.C. Cir. 2011). As set forth in Federal Defendants' opening brief, Plaintiff has not identified any action actually taken by EPA that has harmed Plaintiff's organizational interests in a concrete way; rather Plaintiff bases its theory of harm solely on hypothetical steps it believes EPA might take in reliance on the NAS Report at some point in the future, which Plaintiff then further speculates might in turn affect the chemical industry in some unknowable way. *See* Fed. Defs.' Br. at 17. Plaintiff's opposition does not even address this point. Pl.' Opp. Br. at 37. Rather, Plaintiff noticeably drops its prior argument that "EPA's pending use of the resulting report" qualifies as an action taken by EPA that injured ACC's interests (as opposed to its members' interests). *See* Mem. in Supp. of Mot. for Prelim. or Permanent Inj. Relief, ECF No. 17-1 ("Pl.'s Br.") at 15. In any event, Plaintiff's conjecture about what EPA will do in the future is plainly insufficient to support standing. *See Lujan*, 504 U.S. at 560 (injury must be "concrete and particularized and actual or imminent, not conjectural or hypothetical") (citations omitted);

*Clapper v. Amnesty Int'l, USA*, 568 U.S. 398, 409 (2013) ("'[A]llegations of *possible* future injury' are not sufficient.") (quoting *Whitmore v. Arkansas*, 495 U.S. 149, 158 (1990)).  The absence of any concrete injury is dispositive as to Plaintiff's claim for organizational standing and the Court need go no further.

But Plaintiff's theory also fails at the second step, because its opposition still does not identify any diversion of its resources that qualifies to confer organizational standing.  Pl.'s Opp. Br. at 37.  Plaintiff continues to rely upon its letters and comments to NAS and EPA during their respective review processes.  *Id.*  But those are the very types of advocacy activities that the D.C. Circuit has repeatedly held do not confer standing.  *See People for the Ethical Treatment of Animals v. U.S. Dep't of Agric.*, 797 F.3d 1087, 1093–94 (D.C. Cir. 2015) (finding no standing if an organization's "only injury arises from the effect of [a challenged action] on the organizations' lobbying activities") (citations omitted); *Abigail All. for Better Access to Developmental Drugs v. Eschenbach*, 469 F.3d 129, 133 (D.C. Cir. 2006) ("[A]n organization is not injured by expending resources to challenge the regulation itself; we do not recognize such self-inflicted harm."); *see also Env't Working Grp. v. U.S. Food & Drug Admin.*, 301 F. Supp. 3d 165, 172 (D.D.C. 2018) (explaining that "emails and letters to [the] FDA" is "classic lobbying" insufficient to confer standing).  Plaintiff argues that its communications with NAS and EPA included demands to address perceived FACA violations, but such demands and pre-litigation activity fall squarely within the realm of activities that courts hold insufficient to confer organizational standing.  *See, e.g.*, *Food & Water Watch, Inc. v. Vilsack*, 808 F.3d 905, 919 (D.C. Cir. 2015) ("[A]n organization's use of resources for litigation, investigation in anticipation of litigation, or advocacy is not sufficient to give rise to an Article III injury.").

Nor can Plaintiff's efforts to submit FOIA requests confer organizational standing.  Pl.'s Opp. Br. at 37.  As Plaintiff explains, its FOIA request sought information that it could use "to evaluate the extent of EPA's involvement in the development of the Committee" which it could use to build its claims for the instant suit.  *Id.*  That is the very definition of an "investigation in anticipation of litigation."  *Food & Water Watch, Inc.*, 808 F.3d at 919; *compare Nat. Res. Def. Council v. Dep't of Interior*, 410 F. Supp. 3d 582, 594 (S.D.N.Y. 2019) (finding that standing exists where plaintiff "resort[ed] to FOIA to obtain information Plaintiffs allege should have been publicly disclosed under FACA").

C.  <u>Plaintiff Lacks Associational Standing to Sue Federal Defendants</u>

Federal Defendants also established in their opening brief that Plaintiff lacks associational standing to sue Federal Defendants because Plaintiff has not identified any actual or certainly impending injury that has flowed to its members as a result of actions taken by Federal Defendants. Rather, Plaintiff's theory of harm to its members requires multiple layers of conjecture about how EPA will use the NAS Report in the future, first in connection with the agency's IRIS assessment process and then with respect to how the as-yet-unfinished IRIS assessment could eventually be used by the agency.  Fed. Defs.' Br. at 19–20.

In opposition, Plaintiff has not established that any feared outcome has actually occurred, or that it will be the result of the NAS Report, or that it will occur in a manner that harms ACC or its members in a concrete way.  Pl. Opp. Br. at 36–37.  Unable to meaningfully dispute the fact that its theory of harm rests on a "speculative chain of possibilities," *see* Fed. Defs.' Br. at 34 (quoting *Clapper*, 568 U.S. at 414), Plaintiff argues that it should not be required to wait until a concrete injury is imminent because it would be "difficult, costly, and impracticable for ACC and

its members." Pl. Opp. Br. at 26.  These concerns, however, do not excuse Plaintiff from standing requirements.

Moreover, Plaintiff's theory that FACA uniquely allows them to bypass bedrock standing requirements based on *Animal Legal Defense Fund v. Shalala*, 53 F.3d 363 (D.C. Cir. 1995) and *Alabama-Tombigbee Rivers Coalition v. Department of Interior*, 26 F.3d 1103 (11th Cir. 1994), is misplaced.  Pl.'s Opp. Br. at 36.  Contrary to Plaintiff's argument, those cases do not hold that a plaintiff has standing to seek an injunction under FACA absent a concrete, non-speculative injury.  First, neither case addressed the plaintiff's standing.  Second, while *Alabama-Tombigbee Rivers Coalition* affirmed a district court's decision to enjoin an agency from "publishing, employing and relying upon" an advisory committee's report, it did so based on the plaintiffs' allegation that the agency's violation of FACA caused a concrete, non-speculative injury to plaintiffs.  As discussed above, Plaintiff has not identified any similar injury that is traceable to and redressable by Federal Defendants.

Plaintiff also argues, for the first time in its opposition brief, that its members have been harmed by EPA's current use of the NAS Report. Pl. Opp. Br. at 24–25, 36.  Specifically, Plaintiff argues that an EPA press release—in which it announced receipt of the NAS Report and reiterated the NAS Report's conclusion that EPA's 2022 Draft Formaldehyde Assessment's findings on hazard and quantitative risk are supported by the cited evidence and its recommendations about improving the clarity and assessability of the assessment's methods—"worsen the reputational damage caused by the Report itself." *Id.* at 24.  Plaintiff alleges no facts in support of this theory, and it is not at all clear how EPA's mere repeating of aspects of the already-public NAS Report injured Plaintiff's members.  *See Paracha v. Obama*, 194 F. Supp. 3d 7, 10 (D.D.C. 2016) ("Although the D.C. Circuit has held that 'reputational injury that derives directly from

government action will support Article III standing to challenge that action,' . . . petitioner has presented no evidence that his injury 'derives directly' from the challenged statutes.") (quoting *Foretich v. United States*, 351 F.3d 1198, 1214 (D.C. Cir. 2003)). Similarly, Plaintiff's theory that its members have been harmed by EPA's conveying to the public that its Draft Assessment "is in near-final form and can be relied upon," is devoid of any factual basis and is wildly speculative. Pl. Opp. Br. at 24.

## II.   PLAINTIFF FAILS TO STATE A CLAIM AGAINST FEDERAL DEFENDANTS AS A MATTER OF LAW

Even if Plaintiff had standing to sue Federal Defendants, its claim against them fails as a matter of law.  Plaintiff has pled only one cause of action against Federal Defendants, which contends that EPA violated FACA by "managing and controlling" the NAS Committee, Compl. ¶¶ 162–64, and that "it would be unlawful, arbitrary, and capricious for EPA to rely on the Committee's report" under FACA and the APA, *id.* ¶¶ 162, 165, 166, 168.  Federal Defendants' opening brief demonstrated that FACA does not confer a private right of action and that Plaintiff fails to meet the requirements of the APA because: (1) even accepting the allegations in the complaint as true, EPA did not "manage or control" the NAS Committee within the meaning of FACA; and (2) Plaintiff has not identified a final agency action, a prerequisite to establish a cause of action under the APA.  Fed. Defs.' Br. at 20–29.  Plaintiff's responses in opposition are unavailing.

A.  <u>Plaintiff Fails to State a Claim that EPA "Managed or Controlled" the Committee</u>

Plaintiff continues to assert that EPA "improperly controlled the [NAS] Committee," without grappling with the relevant test that applies to that question.  Pl.'s Opp. Br. at 4.  As explained in Federal Defendants' opening brief, it is well-settled that "management and control" is a term of art under FACA, which is subject to a very high bar.  In order to establish "management or control" by an agency, a committee must be "so 'closely tied' to an agency as to be amenable to 'strict management by agency officials.'"  *Wash. Legal Found. v. U.S. Sentencing Comm'n*, 17 F.3d 1446, 1450 (D.C. Cir. 1994) (quoting *Food Chem. News v. Young*, 900 F.2d 328, 332–33 (D.C. Cir. 1990)).  Evidence that agency employees "exercise significant control over [the committee's] deliberations and on the ensuing recommendations," *id.* at 1451, or that agency officials "collaborated, or worked in parallel, with [the committee]," *Ranchers Cattlemen Action Legal Fund United Stockgrowers of Am. v. U.S. Dep't of Agric.*, 35 F.4th 1225, 1247 (10th Cir. 2022), *cert. denied*, 143 S. Ct. 1000 (2023), is not enough to show "actual management or control."

Plaintiff argues that the cases establishing this "management and control" standard arose out of the generally-applicable section of FACA, which is the section that requires an advisory committee to be "established or utilized" by an agency to be subject to FACA, rather than the NAS-specific provision of FACA.  Pl.'s Opp. Br. at 9.  But courts have specifically defined "utilized" for these purposes as exercising "actual management or control," and when Congress enacted the NAS provision, it deliberately imported the well-settled "management and control" test that had been developed in connection with the general FACA provisions.  *See Fed. Advisory Comm. Act: Hearing Before the Subcomm. on Gov't Mgmt., Info., and Tech. of the Comm. on Gov't Reform and Oversight H. of Reps.*, 105th Cong. 3 (1997) (letter from Hon. Steven Horn, Chairman of Subcomm. on Gov't Mgmt., Info., and Tech.); *id.* at 27 (statement of G. Martin

Wagner, Assoc. Admin'r for Gov't Policy, Gen. Services Admin.) (describing FACA Section 1014 amendment as "mak[ing] clear that the same actual management and control test that is currently applied to committees created by private entities and by governmental bodies not covered by FACA . . . should also be applied to committees created by the [NAS]."); *id.* at 38 ("[Section 1014] reaffirm[s] that regardless of the creating entity's private or quasi-public character mere Federal funding of a committee's work, through the use of a government contract and/or the subsequent use of a committee's work product by an agency, do not constitute actual management and control."); *id.* at 37 ("The 'actual management and control' test established by the amendment is consistent with current case law construing FACA's scope.").  Thus, "management and control" as applied to NAS committees has the same meaning that has long been applied to advisory committees under FACA.

It is clear that EPA's challenged conduct does not meet FACA's high standard for management and control.  Plaintiff first complains that EPA impermissibly limited the scope of the NAS committee's review when it set the scope of work in its initial contract with NAS.  Pl.'s Opp. Br. at 5–7.  But Plaintiff does not—and cannot—cite to any provision in FACA or its implementing regulations that limit an agency's ability to establish a funding mechanism with NAS and develop a "statement of task."  And FACA's implementing regulations explicitly state that doing so does not constitute "actual management or control" by the agency "if the members of the committee are selected by the academy and if the committee's meetings, deliberations, and the preparation of reports are all controlled by the academy." 41 C.F.R. Part 102-3, subp. E, App. A; *see also* Federal Advisory Committee Management, 66 Fed. Reg. 37728, 37,750 (July 19, 2001).  Such is the case here.

Next, Plaintiff still fails to explain how a single employee's response to a casual request from the contractor for recommendations on potential committee members—which is a far cry from EPA selecting any of the NAS committee members—exhibits a higher level of agency involvement than agency employees' actual membership on a committee or collaboration with the committee, which are not enough to show management or control.  *See Wash. Legal Found.*, 17 F.3d at 1450; *Ranchers Cattlemen Action Legal Fund United Stockgrowers of Am.*, 35 F.4th at 1247–48.  Plaintiff also rehashes its earlier argument that the employee did not follow EPA's Peer Review Handbook's provision describing how the agency can suggest peer reviewers.  Pl.'s Opp. Br. at 7.  But this provision applies to *agency* comments on a contractor's selection of peer reviewers, not a single employee who provided suggestions based on a specific request to him from a contractor.  Moreover, divergence from the process in EPA's handbook does not make it a FACA violation.

Nor does the fact that, in response to a FOIA request, EPA redacted certain information from this email exchange under the deliberative process privilege show that "EPA believes it . . . was deciding the Committee's composition."  *Id.* at 8.  Indeed, Plaintiff concedes that "there can be protected communications between an agency and a contractor.  *Id.*  Plaintiff attempts to make much of the fact that the document was withheld as "predecisional," arguing that "EPA cannot explain how its emails about the choice of Committee members simultaneously contribute to 'an agency decision' while also leaving the decision to pick Committee members entirely up to NAS." *Id.*  But that is an argument that EPA improperly redacted the emails under FOIA's Exemption 5, which includes the deliberative process privilege.  That is an argument to be made in the context of a FOIA case, not the instant case.  Regardless of the propriety of the redactions, the released portions of the emails make clear that all that NAS was asking for was "suggestions . . . for

nominees," ECF No. 17-6 at 3, and all that the individual EPA employee provided in response were "suggestions," *id.* at 2, which is simply not the same as demanding or selecting committee members.

     B.   <u>Plaintiff's APA Claim Against Federal Defendants Must Be Dismissed Because It Does Not Challenge Any Final Agency Action</u>

Plaintiff does not dispute that the APA requires it to challenge a final agency action, but nonetheless still fails to identify any final action that is attributable to Federal Defendants. *See* Pl.'s Opp. Br. at 41–42. Because Plaintiff's Complaint does not challenge any final agency action, it does not state a cause of action under the APA.

As explained in Federal Defendants' opening brief, Plaintiff has not identified any action by EPA that "mark[s] 'the consummation' of the agency's decisionmaking process" and from which "rights or obligations have been determined," Fed. Defs.' Br. at 27–28 (quoting *Bennett v. Spear,* 520 U.S. 154, 177–78 (1977)). Rather, the Complaint merely speculates about hypothetical steps EPA might take in the future. *Id.*

And while failure to comply with FACA's procedural requirements may constitute final agency action when those procedural violations are actually attributable to an agency, as Plaintiff points out, Pl.'s Opp. Br. at 42, that does not apply here where Plaintiff has failed to allege any informational or representational injury that is attributable to Federal Defendants. *See supra* Part I.A. Thus, while Plaintiff points out that courts have "allowed plaintiffs to bring FACA claims pursuant to the APA, finding that FACA violations are final agency actions," Pl.'s Opp. Br. at 41, those cases are inapposite because they involved circumstances in which the agency itself was alleged to have committed procedural violations of FACA. *See, e.g.*, *Jud. Watch, Inc. v. U.S. Dep't of Commerce*, 736 F. Supp. 2d 24, 30 (D.D.C. 2010) (contending that agency denied access to information and documents); *Jud. Watch, Inc. v. Nat'l Energy Policy Dev. Grp.*, 219 F. Supp. 2d

20, 40 (D.D.C. 2002) (challenging decision made by head of agency to hold meetings closed to the public in violation of FACA); *see also* Fed. Defs.' Br. at 26 n.9 (explaining why this line of case law does not apply). That is plainly not the situation here, where any alleged procedural violations are attributable to NAS—not the EPA—as the entity that housed and controlled the committee at issue. *See supra* Part II.A (explaining that EPA did not manage or control the NAS committee).

Plaintiff also argues that EPA's press release regarding publication of the NAS Report not only harmed its members but constitutes the EPA "using" the NAS Report in violation of its own FACA obligations under 5 U.S.C. § 1014(a), and is therefore final agency action. Pl.'s Opp. Br. at 42. Restating the argument shows how convoluted it is. A press release announcing the publication of a NAS Report and providing the barest of information about the report can hardly be considered "us[ing] any advice or recommendation provided by the National Academy of Sciences." 5 U.S.C. § 1014(a). Nor can the press release be considered to be the consummation of the agency's decisionmaking process, or to create any rights and obligations for Plaintiff or anyone else. *See West Virginia v. EPA (In re Murray Energy Corp.)*, 788 F.3d 330, 336 (D.C. Cir. 2015) (finding that an agency's public statement about its legal authority to adopt a proposed rule "is not the 'consummation' of the agency's decisionmaking process" nor does it "impose any legal obligations or prohibitions" until the agency finalizes a rule).

Accordingly, Plaintiff's APA claim against Federal Defendants fails as a matter of law.

C.   Plaintiff's Claim Against Federal Defendants Should be Dismissed because the United States has not Waived its Sovereign Immunity

As explained in Federal Defendants' opening brief, the United States cannot be sued absent a waiver of sovereign immunity. While Section 702 of the APA waives immunity for actions "stating a claim" against an agency or an officer or employee of the federal government, the APA's

14

waiver of sovereign immunity does not apply where, as here, a plaintiff does not "state[] a claim" against the federal defendants.  Because Plaintiff has failed to state any claim against Federal Defendants under the APA or otherwise, Section 702's waiver of sovereign immunity does not apply and Federal Defendants cannot be subject to this lawsuit.  Fed. Defs.' Br. at 29.

In opposition, Plaintiff does not seriously dispute this point, but rather asserts only that its "claim that EPA improperly managed or controlled the Committee not only survives a motion to dismiss, but it is likely to succeed."  Pl.'s Opp. Br. at 45.  For the reasons discussed above, those allegations fail as a matter of law.  And because Plaintiff has not stated a claim against Federal Defendants under the APA or otherwise, Federal Defendants should be dismissed from this suit.[2]

D.    Plaintiff Fails to State a Claim Under the Mandamus Act

Plaintiff dedicates a section of its brief to argue that the Court should "enjoin EPA from using the unlawful Report under the Mandamus Act."  *Id.* at 43.  But, as explained in Federal Defendants' opening brief, Plaintiff has not pled a cause of action for mandamus against EPA, and therefore the Court does not have jurisdiction to consider the issue.  *See* Fed. Defs.' Br. at 21 n.6.

In any event, Plaintiff does not meet the high standard for mandamus.  Mandamus relief is appropriate only where "(1) the plaintiff has a clear right to relief; (2) the defendant has a clear duty to act; and (3) there is no other adequate remedy available to plaintiff."  *Baptist Mem'l Hosp. v. Sebelius*, 603 F.3d 57, 62 (D.C. Cir. 2010).  As demonstrated by the extensive briefing in this case, the Court should find that Plaintiff has failed to state a FACA claim against EPA.  But, at a minimum, it cannot be said that Plaintiff has a clear right to a use injunction against EPA.  *See* Fed. Defs.' Br. at 30–33 (explaining why an injunction preventing EPA from using the NAS

---

[2] Plaintiff also argues that Section 702 withdraws the defense of sovereign immunity in actions seeking a writ of mandamus.  *See* Pl.'s Opp. Br. at 45.  But, as discussed below in Part II.D, there is no mandamus claim properly before the Court.

Report would not be appropriate here, even in the event a FACA violation were identified). Under these circumstances, Federal Defendants do not have a clear duty to do (or not do) anything, and Plaintiff does not have a clear right to relief from Federal Defendants. *See* Pl.'s Opp. Br. at 44 n.63.

## **CONCLUSION**

For the foregoing reasons and the reasons set forth in Federal Defendants' opening brief, the Court should dismiss Plaintiff's Complaint as to Federal Defendants with prejudice and waive compliance with Local Rule 7(n).

Dated: December 18, 2023

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

MARCIA BERMAN
Assistant Branch Director
Federal Programs Branch

*/s/ Ally Scher*
Ally Scher
Trial Attorney (DC Bar No. 1616379)
Civil Division, Federal Programs Branch
U.S. Department of Justice
1100 L Street NW
Washington, D.C. 20005
Telephone: (202) 514-9836
E-mail: allyson.r.scher@usdoj.gov

*Counsel for Defendants*
*U.S. Environmental Protection Agency*
*and Michael S. Regan*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 18th day of December, 2023, a true and correct copy of this document was served electronically by the Court's CM/ECF system to all counsel of record.

*/s/ Ally Scher*
Ally Scher